UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

No. 4:10-CV-00020-F

| | |
|---|---|
| PATTIE D. WILLIAMS; and ) <br> DANIEL D. WILLIAMS, ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> POPULAR MORTGAGE SERVICES, ) <br> INC.; and MONUMENTAL LIFE ) <br> INSURANCE CO., ) <br> Defendants. ) | <u>O R D E R</u> |

This matter is before the court for ruling on a number of motions, filed mostly by the *pro se* plaintiffs, Pattie D. Williams and Daniel D. Williams ("the Williamses"); both defendants have filed dispositive motions as well as motions for sanctions. The court has delayed ruling to date with the intent of ruling on all pending motions at once, but before any motion can become ripe, another is filed.

## FACTUAL BACKGROUND

Unfortunately, the full "factual background" of this controversy remains shrouded in mystery. From what the defendants and the court can cobble together, the Williamses have or had a mortgage on their home with defendant Popular Mortgage Services, Inc., ("PMSI"), secured by a note and deed of trust. PMSI at some point offered, suggested, induced, or otherwise persuaded the Williamses to purchase a mortgage insurance policy that would pay off the mortgage in the event of accidental death. Defendant Monumental Life Insurance Company ("MLI") underwrote the insurance policy, which allegedly became effective on November 1, 2005. The premium for the life insurance was $28.20 per month which sum the Williamses purportedly paid, together with their monthly mortgage payment, to PMSI. In turn, PSMI

presumably then was to forward the premium to MLI. According to the Complaint [DE-5][1] MLI canceled the life insurance policy for "non-payment" in February 2006, but allegedly did not notify the Williamses until May 2007, when, in response to the Williamses' request for a copy of their policy, MLI sent them a "specimen certificate." *See* [DE-50]. The Williamses contend that they had continued to make timely premium payments during the 15 months before they received the "specimen certificate."

Mr. Williams was scheduled to undergo surgery in July 2007. The Williamses contend that they had believed that if Mr. Williams died or became unable to work as a result of his surgery, their MLI death/disability insurance policy would pay the mortgage. When they discovered to their horror sixty days prior to surgery that the MLI insurance policy had been canceled, the Williamses allege they suffered severe emotion distress for which the defendants are liable.

In the Complaint, the Williamses allege specifically that MLI is liable to them for intentional infliction of emotional distress, in that MLI "withheld a letter of cancellation causing plaintiff [sic] to make payments for 16 months on a cancelled death/disability insurance policy, informing plaintiffs 60 days before surgery 7-2007 of the cancelled policy, a universal act known to cause emotional stress." Complaint [DE-5], at p. 2. The Williamses contend PMSI is liable to them on the theory of tortious interference of contract "due to withholding paid insurance premiums, making the insurance agreement between Plaintiffs and Monumental Life Ins. Co. 'objectively' 'impossible' to perform, causing cancellation and injury to pl." *Id.*

The Williamses attached several exhibits to their Complaint, among which no copy of the subject MLI death/disability policy that is the subject of this lawsuit appeared. That is,

---

[1] The label, "Amended Complaint," is not accurate. The Williamses never served the Complaint they filed on February 10, 2010 [DE-1]. The only Complaint that arguably is viable is [DE-5].

although their claims for relief are based entirely on a document they received in May 2007, they neglected to supply a copy of that document with their 2010 Complaint. In fact, it appears that the "specimen certificate" was not submitted in the first instance until seven (7) months into this lawsuit.

The text of the Complaint contains no reference to the documents the Williamses *did* attach to it. Between the time the Williamses filed the initial (un-served) Complaint [DE-1] and the Complaint [DE-5] that is the subject of this action, they filed a two-page document entitled, "Plaintiffs Attachment Detailing Elements {IIED}," listing the facts they contend support their claim of intentional infliction of emotional distress against PMSI. *See* [DE-2]. While lengthier, the Elements document did not add substance to the facts alleged in the Complaint [DE-5]. Nor was it accompanied by a copy of the insurance policy – that was the basis for their claims.

The Complaint seeks damages in the sum of $94,000.00 against PMSI for tortious interference with contract, and $94,000.00 against MLI for intentional infliction of emotional distress. It appears that the $94,000.00 sum represents both the benefit the Williamses expected to receive from the insurance policy, and the total debt the Williamses owed to PMSI.

## PROCEDURAL BACKGROUND

A proper perspective of this case requires an overview of the parties' relationship. Since June 2007, the Williamses have filed three lawsuits arising from alleged mortgage and insurance contracts with PMSI and MLI. Each of the lawsuits is based, at least in part, on exactly the same factual allegations pled here: that MLI canceled the Williamses' "death and disability insurance policy" for non-payment when PMSI stopped forwarding to MLI the premiums the Williamses paid through PMSI.

On those facts, the Williamses sought relief from both PMSI and MLI in the first suit, filed in state court on June 29, 2007 (the "2007 action"), under the theories of breach of contract, negligence and fraud. The defendants removed the case to federal court where

ultimately it was dismissed for lack of subject matter jurisdiction because the Complaint did not support a claim for damages exceeding $75,000.00. In his order remanding the case to state court, U.S. District Judge Malcolm W. Howard wrote, in pertinent part:

> Plaintiffs' complaint appears to center on two main problems with the mortgage company and the insurance company: (1) escrow monies held (allegedly wrongfully) by PMSI, which appears [sic] to amount to only a few hundred dollars and (2) premiums for life insurance policies that have been paid and either not properly credited or not properly refunded in the amount of $28.20 per month for approximately 18 months prior to the filing of this suit. Totaling these items, trebling the damages, and *even adding a significant amount for any emotional distress* caused to the plaintiffs still fails to reach the jurisdictional requirement . . . .

*Williams v. Popular Mortgage*, No. 5:07-CV-324-H, [DE-48] at pp. 4-5 (E.D.N.C. Feb. 21, 2008) (emphasis added).

On remand, back in Nash County Superior Court, both defendants moved to dismiss the action for lack of subject matter jurisdiction, failure to state a claim upon which relief may be granted, and failure to allege fraud with sufficient particularity. Senior Resident Superior Court Judge Quentin T. Sumner allowed the defendants' motions pursuant to Rules 12(b)(1), 12(b)6), and 9(b), N.C. R. CIV. P., and dismissed the action without prejudice. *See Williams v. Popular Mortgage Servicing, Inc. and Monumental Life Ins. Co.*, No. 07-CVS-01206 (Nash Co., NC, Superior Court June 13, 2008) [DE-34.12]. Under North Carolina procedural law, a case dismissed without prejudice may be re-filed in state court within one year. *See* N.C. RULES CIV. P. 41(b).

On June 24, 2009 – one year and eleven days later – the Williamses filed their second lawsuit based on the same facts, but not in state court. They filed *Williams v. Popular Mortgage Servicing, Inc. and Monumental Life Ins. Co.*, No. 5:09-CV-00303-FL ("the 2009 action"), in the federal district court, alleging diversity of citizenship and requisite amount in controversy. The case was assigned to Chief Judge Louise W. Flanagan. The same parties were named and the

4

defendants were represented by the same attorneys as appear in this case.[2] The factual predicates for that lawsuit were the same as both this one and the 2007 action. Judge Flanagan described the Williamses' allegations, in pertinent part, as follows:

> Plaintiffs allege defendant PMSI began servicing their mortgage on or about June 2005. . . . At that time, defendant PMSI informed plaintiffs of an opportunity to enroll in death or disability insurance. . . . Defendant [MLI] was the issuer of the offered policy, and the alleged policy value was $94,000.00. . . . Plaintiffs assert they enrolled in the insurance plan and paid their monthly premium for more than a year to defendant PMSI. . . . Plaintiffs also assert that defendant [MLI] cancelled the insurance policy ninety days after issuance, but defendants continued to accept plaintiffs' payment of premiums. . . . Rather than directly refund the overpayment to plaintiffs, plaintiffs claim defendant PMSI refunded the overpayment into escrow toward payment of plaintiffs' mortgage. Specifically, plaintiffs' complaint asserts three causes of action: (1) breach of contract; (2) fraud; and (3) housing discrimination, 42 U.S.C. § 3601.

*Id.* [DE-42] at pp. 1-2 (citations and footnotes omitted). The Williamses also moved twice in that case to amend their complaint to add a claim under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132 (discrimination by a public entity), but both motions were denied. In the order of January 25, 2010, Judge Flanagan allowed both defendants' motions to dismiss for failure to state a claim upon which relief could be granted, pursuant to Rule 12(b)(6), FED. R. CIV. P., and dismissed the plaintiffs' motion for summary judgment as moot.

Two weeks later, the Williamses instituted this action by Complaint [DE-1] that never was served, but was followed shortly thereafter by Complaint [DE-5] which is the subject of the defendants' Motions to Dismiss. A protracted and confusing series of attempts to effect service of process on the defendants ensued. While not conceding proper service, both defendants individually moved to dismiss the Complaint pursuant to Rule 12(b)(6), FED. R. CIV. P. *See* Motion to Dismiss by MLI [DE-28/-36]); Motion to Dismiss by PMSI [DE-33].

This lawsuit constitutes the Williamses' *third* attempt to sue these same defendants for events related to cancellation of the alleged insurance policy underwritten by MIL. After the

---

[2] PMSI has been represented by the same attorney in all three lawsuits.

motions to dismiss were filed, Responses and Replies were filed all around, after which time the Williamses filed a document entitled "Tortious Interference" [DE-44], followed by a Motion to Amend [DE-48] seeking to add a cause of action for "contract discrimination" under the Americans with Disabilities Act, citing "42 U.S.C. § 12181, 82 of the ADA of 1990 amended discrimination by A private entity, Section 42.12101 Findings and purposes of the ADA amendments Act of 2008, pub.L. 110-325 statute 2. September 25, 2008 122.statute 3553." Memorandum in Support of Motion to Amend [DE-49], at p. 1. Again, Responses and Replies were filed all around. Then the parties' efforts shifted to sanctions, censure, expansion of the litigation in this court, remand, and fee requests.

Most recently, the Williamses have moved to "remove" a North Carolina foreclosure proceeding from state court to this court for consolidation with the instant case. *See* [DE-62]. Of course, a plaintiff may not remove a case to federal court pursuant to 28 U.S.C. § 1441(a). Moreover, the state foreclosure action is entirely unrelated to the allegations raised in the Williamses' Complaint in this case.[3] The court deem it inexpedient and not in the best interests of any party to discuss the particulars of the state foreclosure action that is the subject of [DE-62, -63, -64, -65, and -66]. The Williamses' "Motion for Removal and Joinder" [DE-62] is DENIED; and the Motion to Remand [DE-65/66] is DENIED as moot.[4]

---

[3] The court understands and acknowledges that it is the Williamses' theory that the state foreclosure action is the result of the defendants' causing the cancellation of the death or disability insurance policy. The theory would be that because of the defendants' wrongful cancellation, Mr. Williams, who allegedly is disabled, could not collect the benefits for which he had paid premiums and to which he deems himself entitled. He contends that, because he is disabled and without insurance benefits, he cannot make the payments due on the mortgaged property.

[4] The "removal" effort by the Williamses was improper for any number of reasons, and in this court it was not effective. The court declines in its discretion to award attorney's fees to the entity that filed the Motion to Remand [DE-65, -66]. That entity is not a party in this action.

## STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(6) determines only whether a claim is stated; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). A claim is stated if the complaint contains "sufficient factual matter, accepted as true, to "state a claim to relief that is 'plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. ___, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This plausibility standard is met where "the factual content of a complaint 'allows the court to draw the reasonable inference that the defendant is liable for the [conduct] alleged.' " *Nemet Chevrolet Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009) (quoting *Iqbal*, 129 S. Ct. at 1949). In addition to the pleadings, the court may look to documents attached to the complaint or those attached to the motion to dismiss that are integral to the complaint and authentic, and also may take judicial notice of matters of public record. *See Philips v. Pitt County Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff." *Id.* However, the court does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." *Id.* (citations omitted). Although a *pro se* complaint is judged by "less stringent standards than formal pleadings drafted by lawyers," *Haines v. Kerner*, 404 U.S. 519, 520 (1972), the complaint nevertheless must contain either direct or inferential allegations concerning all the material elements necessary to sustain a recovery under some viable legal theory. *See Garrison v. R.H. Barringer Distrib. Co.*, 152 F. Supp. 2d 856, 860 (M.D.N.C. 2001) (citation omitted).

7

## DISCUSSION

Although neither the Williamses nor the defendants have produced a purported copy of the subject insurance policy, the Williamses filed a packet of materials and a cover letter addressed to the undersigned [DE-50], on September 9, 2010.[5] Among the documents contained in this filing is a May 5, 2007, cover letter addressed to the Williamses, purportedly from MLI, to which is attached a "specimen certificate for the above-referenced master group insurance policy and certificate number . . . solely for information purposes and its contents should not be understood or interpreted in any manner to recognize or establish insurance coverage." Cover Letter & Specimen Certificate [DE-50.9] ("the Policy"). The Williamses refer in their "Attachment Detailing Elements" [DE-2] to MLI having "delivered the insurance policy in May 07 (after being reported) to the N.C. Dept. of Insurance months Before plaintiffs surgery (7-2007)." The Williamses apparently deem "the Policy" to contain the terms and conditions of their own (canceled) contract with MLI.

The Policy lists "Pattie D. Williams" as the "Insured," and Daniel D. Williams" as the "Joint Insured." *Id.* The " 'Insurer' means Monumental Life Insurance Company." *Id.* The Initial Coverage is listed as "$94.000.00," with a $28.20 monthly premium. *See id.* The lender is stated to be "Popular Mortgage Servicing, Inc." *See id.* [DE-50.9].

The document – the "specimen certificate"– provided by the Williamses who in turn received it from MLI, does not purport to be a disability/death policy at all; it is a "MORTGAGE ACCIDENTAL DEATH BENEFIT" policy. *Id.* The first sentence in the "BENEFITS" section is:

> We will pay the Accidental Death Benefit shown in the Schedule when we receive proof that you died as a result of an Injury, provided death occurred within 365 days of the Injury. The benefit will be applied to reduce or payoff [sic] your Outstanding Balance at the time of your death."

---

[5] Those materials are of record and are being maintained under seal due to the nature of the contents and private financial information disclosed therein.

8

*Id.* Among the exclusions is "Sickness [an illness or disease of the body or mind] or its medical or surgical treatment, including diagnosis." *Id.* The "GENERAL PROVISIONS" section explains, *inter alia*, that any excess after payment of the outstanding mortgage balance "will be paid to your estate." *Id. The word, "disability" does not appear even once in the "Individual Mortgage Accidental Death Insurance Policy Nonparticipating" attached as Exhibit 9 to the Williamses' filing at [DE-50].*

Not until February 14, 2011, well after the Williamses filed in this case a copy of the "specimen certificate" in September 2010, and *long* after these defendants began in June 2007, to defend against the Williamses' serial lawsuits concerning this canceled policy did either defendant suggest that the *pro se* plaintiffs' most basic premise – that the subject policy covered death *or disability* – was flawed. Certainly it is the burden of the plaintiff to prove the existence and the terms of a contract and, to date, these plaintiffs have not done so. It is unfortunate, to say the least, that litigation has been ongoing for more than four years over an alleged insurance contract that seemingly never has been produced by any party, and which the defendants apparently were content to let plaintiffs' mistakenly believe had provided for disability as well as accidental death benefits. *See, e.g.*, PSMI's Memorandum [DE-55] and the 31 attachments thereto (purporting to be copies of the Williamses' court filings since September 2007, but not including any of the two defendants' voluminous and often duplicated filings).

Taking as true that the Williamses' lapsed insurance policy was similar to the coverage described in the Policy [DE-50], they have alleged no factual basis for a viable tort claim of intentional infliction of emotional distress or tortious interference with contract. Whether or not the actual insurance policy had contained the coverage the Williamses desired, they nevertheless have failed to meet their burden to state a claim in their Complaint [DE-5] upon which relief may be granted against PMSI for intentional infliction of emotional distress or against MLI for tortious interference with contract. As the defendants have pointed out, the

9

Complaint contains an insufficient factual basis upon which to find a plausible claim for either tort.

I. Intentional Infliction of Emotional Distress

To state a claim under North Carolina common law for intentional infliction of emotional distress ("IIED"), "a plaintiff must prove '(1) extreme and outrageous conduct, (2) which is intended to cause and does cause (3) severe emotional distress to another.'" *Beck v. City of Durham*, 154 N.C. App. 183, 190-91, 573 S.E.2d 183, 190-91 (2002) (quoting *Dickens v. Puryear*, 302 N.C. 437, 276 S.E.2d 325, 335 (N.C. 1981)). The body of case law interpreting and exploring the parameters of a viable IIED claim is well-known among legal practitioners in North Carolina who also are keenly aware of its lofty threshold requirement for despicability of conduct. Whether conduct alleged in a complaint is sufficiently extreme and outrageous to support an IIED action initially is a question of law for the court. *See Lenins v. K-Mart Corp.*, 98 N.C. App. 590, 599, 391 S.E.2d 843, 848 (N.C. App. 1990).

The North Carolina Court of Appeals held in 1985 that, "A contract of insurance . . . is a commercial transaction, and absent allegations of specific facts which if proved would demonstrate calculated intentional conduct causing emotional distress directed toward a claimant, a complaint for insurance benefits alleging intentional infliction of emotional distress will not withstand a motion to dismiss under Rule 12(b)(6)." *Beasley v. National Savings Life Ins. Co.*, 75 N.C. App. 104, 109-10, 330 S.E.2d 207, 210 (1985); *see also von Hagel v. Blue Cross and Blue Shield of N.C.*, 91 N.C. App. 58, 63-64, 370 S.E.2d 695, 699-700 (N.C. App. 1988); *cf. Patel v. Scotland Memorial Hosp.*, No. 3:94CV00284, 1995 WL 319213, slip op. at *8 (M.D.N.C. Mar. 31, 1995) (citing *Beasley* for the proposition that "[m]ere failure to honor a commercial contract is insufficient to support an action for intentional infliction of emotional distress"), *aff'd*, No. 95-2704 (4th Cir. July 10, 1996), *cert denied*, 519 U.S. 1092 (1997).

10

The court ADOPTS the discussion and analysis contained in MLI's Memorandum [DE-29], at pp. 3-11, concerning the sufficiency of the Complaint [DE-5] and Attachment Detailing Elements IIAD [DE-2], under Rule 12(b)(6), FED. R. CIV. P. As a matter of law, because the Williamses did not allege facts of the type or degree necessary to support their "formulaic recitation of the elements," *Twombly*, 550 U.S. at 555, their Complaint fails to state a claim against MLI for the common law tort of intentional infliction of emotional distress. MLI's Motion to Dismiss [DE-28/-36], therefore is ALLOWED.

II. Tortious Interference with Contract

The Williamses' only claim against PMSI is that, by failing to forward to MLI the premiums the Williamses included in their mortgage payments to PMSI, PMSI rendered it impossible for the Williamses to perform their contract with MLI, resulting MLI's cancellation of the insurance policy for non-payment. In full, the Williamses alleged that PMSI "with[held] paid insurance premiums, making the insurance agreement between Plaintiffs and Monumental Life Ins. Co. 'objectively' 'impossible' to perform, causing cancellation, and injury to pl." Complaint [DE-5], at p. 2.[6] Therefore, the Williamses reason, PMSI is liable to them under the theory of tortious interference with contract for the benefits that would have been payable had the insurance policy not been canceled.

The facts on which the Williamses' base their tortious interference claim are *exactly* the same as those they used for their "breach of contract" and "fraud" claims against the same defendants in the 2009 action. *See* Order of January 25, 2010 [DE-34.22]. By allowing the defendants' motions to dismiss pursuant to Rule 12(b)(6), FED. R. CIV. P.,[7] Chief Judge Flanagan

---

[6] The "Detailing Elements" document [DE-2] contains no discussion of tortious interference with contract.

[7] While Judge Flanagan's order does not specifically state that dismissal was pursuant to Rule 12(b)(6), it does cite the defendants' motions to dismiss, both of which specifically were based on Rule 12(b)(6). *See* Order of January 25, 2010 [DE-34.22], at p. 7 (ruling that

11

ruled on the merits that these facts did not support a viable claim in the 2009 action for breach of contract or fraud against either of the same defendants. *See Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 399 n.3 (1981) (holding that "[t]he dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is a 'judgment on the merits' "). Here, the Williamses simply have re-named the cause of action and tossed in terms associated both with tort ("objectively") and with contract (" 'impossible' to perform") parlance.

Pursuant to North Carolina common law, to state a valid claim for tortious interference with contract, a plaintiff must allege facts supporting the following five elements: "(1) a valid contract between the plaintiff and a third person which confers upon the plaintiff a contractual right against a third person; (2) the defendant knows of the contact; (3) the defendant intentionally induces the third person not to perform the contract; (4) and in so doing acts without justification; (5) resulting in actual damage to plaintiff." *Speedway Promoters, Inc. v. Hooter's of America, Inc.*, 123 F. Supp.2d 956, 963 (W.D.N.C. 2000) (quoting *United Lab., Inc. v. Kuykendall*, 322 N.C. 643, 661, 370 S.E.2d 375, 387 (1988)).

PMSI contends that in light of the two earlier lawsuits, the Williamses' tortious interference with contract claim against it is barred by the equitable theory of *res judicata*. Alternatively, PMSI argues that this latest Complaint, like the last one, fails to state a claim for which relief may be granted pursuant to Rule 12(b)(6), FED. R. CIV. P.

The doctrine of *res judicata* encompasses the concepts both of claim preclusion and issue preclusion (also called "collateral estoppel"). *See In re Varat Enters., Inc.*, 81 F.3d 1310, 1315 n.5 (4th Cir. 1996) (the term *"res judicata"* sometimes is used interchangeably with the term "claim preclusion," as the term "collateral estoppel" sometimes is used interchangeably with the term "issue preclusion").

---

"Defendants' motions to dismiss are GRANTED. (DE ## 13, 29))."

The doctrine of claim preclusion posits that if a later case arises from the same cause of action as an earlier case, then the prior judgment bars litigation of every matter already adjudicated, as well as every claim that might have been presented at that time. *Id.* at 1315; *Aliff v. Joy Mfg. Co.*, 914 F.2d 39, 43 (4th Cir. 1990). Three elements must be met to satisfy claim preclusion: (1) a judgment on the merits in the prior suit, rendered by a court of competent jurisdiction (2) that resolves claims by the same parties or their privies, and (3) a subsequent suit based on the same cause of action. *See Varat Enters.*, 81 F.3d at 1315; *Aliff*, 914 F.2d at 42.

"Issue preclusion," also referred to as "collateral estoppel," prevents a party from re-litigating issues of fact or law "that are identical to issues which have been actually determined and necessarily decided in prior litigation in which the party against whom [issue preclusion] is asserted had a full and fair opportunity to litigate." *Sedlack v. Braswell Servs. Group, Inc.*, 134 F.3d 219, 224 (4th Cir. 1998) (quoting *Ramsay v. INS*, 14 F.3d 206, 210 (4th Cir. 1994) (alteration in original)). Both claim preclusion and issue preclusion (collateral estoppel) serve "the dual purpose of protecting litigants from the burden of relitigating an identical issue . . . and of promoting judicial economy by preventing needless litigation." *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 (1979).

In that spirit of avoiding revisitation of identical issues and of promoting judicial economy, the court hereby ADOPTS the rationale set out in PMSI's Memorandum [DE-34], and CONCLUDES that the Williamses may not have yet another bite of this apple. The Williamses have had more than one full and fair opportunity to litigate against these defendants for alleged injuries arising from the cancellation of a purported contract, the terms of which have yet to be revealed. The court further CONCLUDES that the Williamses have failed to meet their obligation to allege facts supporting grounds for entitlement to relief. That obligation "requires more than mere labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. PMSI's Motion to Dismiss [DE-33] is ALLOWED.

III. Motions for Pre-filing Injunction and Sanctions

Both defendants have moved for entry of a pre-filing injunction and imposition of sanctions against the Williamses. *See* [DE-54 and -60]. The memoranda supporting both those motions contain detailed chronologies of the ongoing litigation between these parties; reference to the court's official docket in CM/ECF is advised. The court takes judicial notice of the Williamses' history of litigation activity in this court concerning their personal finances. *Daniel D. & Pattie Williams v. Popular Mortgage Servicing, Inc. & Monumental Life Ins. Co.*, 5:07-CV-324-H; *Daniel D. & Pattie Williams v. Popular Mortgage Servicing, Inc. & Monumental Life Ins. Co.*, No. 5:09-CV-303-FL; *Daniel D. Williams & Pattie Williams v. Popular Mortgage Servicing, Inc. & Monumental Life Ins. Co.*, 5:10-CV-20-F. The Williamses now wish to expand this lawsuit to include proceedings, ongoing in state court, concerning a mortgage foreclosure action unrelated to the insurance cancellation controversy underlying this and their prior lawsuits in this court. *See* Motion [DE-62] & [DE-63 through -66].

"Courts have the authority to protect defendants from the harassment of frivolous and vexatious lawsuits, and to protect themselves from having to process frivolous and repetitive papers." *Armstrong v. Koury Corp.*, 16 F. Supp. 2d 616, 620 (M.D.N.C. 1998). In addition, "[t]he court is given substantial discretion to craft appropriate sanctions, and an injunction from filing any further actions is an appropriate sanction to curb groundless, repetitive, and frivolous suits." *Id.*

The court, in its discretion, declines *at this time* to impose either a pre-filing injunction or sanctions against the Williamses. They now are on notice, however, that even as *pro se* parties, they are subject to compliance with the Local Rules of this Court as well as the Federal Rules of Civil Procedure, and statutory and common law applicable to their lawsuit. They now know that they are not free to pursue piecemeal litigation, trotting out a string of alternative theories in serial lawsuits against the same parties arising from the same factual allegations. The court has

afforded the Williamses a liberal construction of their pleadings, but they are not exempt from the established law governing pleadings and proof of claims in federal court. Should the Williamses again engage these defendants in a lawsuit arising from the facts underlying this case and Chief Judge Flanagan's case, No. 5:09-CV-303-FL, the presiding judge may seriously consider any motion a defendant may file for sanctions under Rule 11, FED. R. CIV. P. and/or Rule 11.1 Local Civil Rules (E.D.N.C.).

The defendants' Motion for Sanctions and Pre-Filing Injunction [DE-54] and [DE-60] are DENIED.

### IV. Remaining Motions

The following motions are DENIED:

| | |
|---|---|
| [DE-44] | (Williamses' "Tortious Interference" to the extent it seeks relief) |
| [DE-46] | (Monumental's Motion to Strike [DE-44]) – moot |
| [DE-48] | (Williamses' Motion to Amend to Add ADA Claim) |
| [DE-68] | (Williamses' Motion to Censure) |

### CONCLUSION & SUMMARY

The defendants' respective Motions to Dismiss [DE-28/-36] and [DE-33] are ALLOWED, and this action is DISMISSED with prejudice in its entirety on the merits, pursuant to Rule 12(b)(6), FED. R. CIV. P.

The following motions are DENIED;

| | |
|---|---|
| [DE-44] | (Williamses' "Tortious Interference" to the extent it seeks relief) |
| [DE-48] | (Williamses' Motion to Amend to Add ADA Claim) |
| [DE-54] | (PMSI's Motion for Sanctions and Pre-Filing Injunction) |
| [DE-60] | (MLI's Motion for Sanctions and Pre-Filing Injunction) |
| [DE-62] | (Williamses' Motion to Remove/for Joinder) |
| [DE-68] | (Williamses' Motion to Censure) |

The following motions are DENIED as moot:

[DE-46] (Monumental's Motion to Strike [DE-44])

[DE-65/-66] (Non-party's Motion to Remand & Attorney's Fees).

SO ORDERED.

This, the 30th day of June, 2011.

*(signature)*
JAMES C. FOX
Senior United States District Judge